IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| EDIZONE, L.C.,<br><br>   Plaintiff,<br><br>vs.<br><br>CLOUD NINE, et al.,<br><br>   Defendants.<br>_____<br>CLOUD NINE, et al.,<br><br>   Counterclaim-Plaintiffs and<br>   Third-Party Plaintiffs,<br><br>vs.<br><br>EDIZONE, L.C.,<br><br>   Counterclaim-Defendant,<br><br>   and<br><br>TERRY PEARCE, et al.,<br><br>   Third-Party Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTIONS IN LIMINE RE: RASMUSSEN<br><br><br><br><br>Case No. 1:04-CV-117 TS |

This matter is before the Court on two motions in limine concerning Plaintiff's damages expert Derk Rasmussen and a third motion relating to Plaintiff's damages claims. Defendants' Motion in Limine #1 to Exclude Certain Expert Testimony of Derk Rasmussen seeks to exclude three types of testimony: (1) testimony relating to minimum royalty payments; (2) testimony relating to "Scenario 1"; and (3) testimony relating to any cause of action other than patent infringement and breach of contract. Defendants' Motion in Limine #2 to Exclude Opinions in, and any Reliance Upon, May 14, 2008 Report of Derk Rasmussen seeks to exclude Mr. Rasmussen's May 14, 2008 report. Defendants' Motion in Limine #5 to Preclude Discussion of Damages Not Addressed in a Timely Expert Report seeks to prevent any discussion of damages which have not been set forth in an expert report.

## I. MOTION IN LIMINE #1

Defendants' Motion in Limine #1 concerning Mr. Rasmussen seeks to preclude Mr. Rasmussen from testifying about: (1) damages for patent infringement based on minimum royalty payments; (2) Scenario 1 contained in his damage reports which applies the foregoing methodology; and (3) any cause of action other than patent infringement and breach of contract.

Fed.R.Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

2

In *Daubert v. Merrell Dow Pharmaceuticals Inc.*[1] and *Kumho Tire Co., Ltd. v. Carmichael*,[2] the Supreme Court interpreted the requirements of Rule 702. "*Daubert* requires a trial judge to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"[3] "In applying Rule 702, the trial court has the responsibility of acting as a gatekeeper."[4] "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."[5]

"The Supreme Court has provided some guidance for the task of determining scientific validity."[6] "This inquiry is 'a flexible one,' not governed by a 'definitive checklist or test.'"[7] Some factors to consider are whether the expert's theory or technique: (1) can be (and has been) tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error with standards controlling the technique's operation; and (4) enjoys widespread acceptance in the relevant scientific community.[8]

---

[1] 509 U.S. 579 (1993).

[2] 526 U.S. 137 (1999).

[3] *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1163 (10th Cir. 2000) (quoting *Daubert*, 509 U.S. at 589).

[4] *In re Breast Implant Litigation*, 11 F.Supp. 2d 1217, 1222 (D. Colo. 1998).

[5] *Daubert*, 509 U.S. at 592.

[6] *In re Breast Implant Litigation*, 11 F.Supp. 2d at 1223.

[7] *Atlantic Richfield*, 226 F.3d 1163 (citing *Daubert*, 509 U.S. at 593).

[8] *Id*.

"Rule 702's second prong concerns relevancy, or 'fit.'"[9]  "The trial court 'must ensure that the proposed expert testimony is 'relevant to the task at hand,' . . . *i.e.*, that it logically advances a material aspect of the proposing party's case.'"[10]  Because of the dangers of the potential misuse of scientific evidence, "federal judges must exclude proffered scientific evidence under Rule 702 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury."[11]

"*Kumho Tire* establishes that the 'gatekeeping' requirement set forth in *Daubert* 'applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.'"[12]  "The object of that requirement 'is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"[13]

> The trial court must also look to Fed.R.Evid. 703 in determining the admissibility of expert testimony. Rule 703 also contemplates that the court will play a role in the assessment of expert testimony offered to a jury. Rule 703 provides that expert opinions based on otherwise inadmissible evidence are to be admitted only if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." An expert's otherwise relevant opinion is only admissible under Rule 703 where the underlying data

---

[9] *In re Breast Implant Litigation*, 11 F.Supp. 2d at 1223.

[10] *Id*. (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)).

[11] *Id*.

[12] *Atlantic Richfield*, 226 F.3d at 1163 (quoting *Kumho Tire*, 526 U.S. at 141) (citation omitted).

[13] *Id*. (quoting *Kumho Tire*, 526 U.S. at 152).

4

have sufficient probative force and reliability that a reasonable expert could base an opinion on them.[14]

Defendants argue that Mr. Rasmussen's methodology is unreliable and, therefore, should be excluded. Defendants argue that his methodology is unprecedented and untested. However, according to his deposition, Mr. Rasmussen is aware of precedent in textbooks, professional publications, cases or reported opinions that employ his methodology. Further, Defendants have produced no evidence, and no expert of their own, to counter Mr. Rasmussen's methodology. Therefore the Court must deny the Motion on this ground and will permit testimony on this methodology and Scenario 1.

As discussed below, the Court will prevent Rasmussen from testifying on the issue of damages relating to Plaintiff's misappropriation of trade secrets claim. Thus, the Court will grant Defendants' Motion on this ground.

## II.  MOTION IN LIMINE #2

Defendants' Motion in Limine #2 seeks to exclude the opinions in and any reliance upon Mr. Rasmussen's May 14, 2008 report. Mr. Rasmussen has now filed four reports: January 27, 2006, December 27, 2006, December 10, 2007, and May 14, 2008. Mr. Rasmussen's latest report makes a number of changes. While some changes, such as extending the damage calculation from the prior trial date to the new trial date, are rather mundane, the report makes one major change to which Defendants' object. For the first time, Mr. Rasmussen opines as to the damages sustained as a result of Defendants' alleged misappropriation of trade secrets.

Fed.R.Civ.P. 26(e)(2) requires that additions or changes to an expert's report "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." "If a party

---

[14]*In re Breast Implant Litigation*, 11 F.Supp. 2d at 1223.

fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."[15]  The Court considers the following factors in determining whether a Rule 26(a) violation is justified or harmless: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.[16]

      The Court recognizes that the May 14, 2008 report is untimely.  However, the Court finds that the untimeliness of the report is justified because it is largely the result of Defendants' actions.  On March 4, 2008, Plaintiff began the process of updating its damages report by seeking certain information from Defendants.  Defendants refused to comply with Plaintiff's discovery request, which resulted in a Motion for Expedited Discovery being filed by Plaintiff.  The Magistrate Judge granted that Motion and directed Defendants to turn over that information.  Defendants objected to the Magistrate Judge's Order and the Court later overruled that objection.  As a result, Defendants did not turn over all of the requested documentation until May 2, 2008.  Thus, the updated damages report could not have been completed in a timely fashion.  The Court will not punish Plaintiff as a result of Defendants' delay.

      The Court further finds that Defendants will suffer no prejudice.  The May 14 2008 report is not materially different than the previous reports.  While some of the legal opinions upon which Mr. Rasmussen bases his findings on have changed, the underlying methodology he uses

---

[15] Fed.R.Civ.P. 37(c).

[16] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

remained the same.  Further, Defendants recently deposed Mr. Rasmussen and were offered the opportunity to depose him again after the issuance of the May 14 2008 report, an offer which Defendants declined.  Finally, Defendants will have ample opportunity to cross examine Mr. Rasmussen at trial.  Therefore, Defendants' request to exclude the report entirely will be denied.

The Court will, however, preclude any reference to or reliance upon the opinions set out in the May 14, 2008 report concerning Plaintiff's misappropriation of trade secrets claim.  For the first time in his May 14, 2008 report, Mr. Rasmussen discusses damages relating to Plaintiff's misappropriation of trade secrets claim.  There is no reason that this issue could not have been discussed in the prior reports.  The Court finds that allowing Mr. Rasmussen to testify on this issue would prejudice Defendants.  Therefore, the Court will preclude testimony on this issue from Mr. Rasmussen.

### III.  MOTION IN LIMINE #5

In addition to seeking to preclude testimony by Mr. Rasmussen on damages which were not included in his prior reports, Defendants' Motion in Limine #5 seeks to preclude any person from testifying about damages other than those contained in expert reports.

The Court agrees that any expert testimony on the issue of damages other than that previously disclosed is barred by Rule 37(c) because of Plaintiff's non-disclosure.  This does not mean, however, that no evidence can be admitted on the issue of damages.  Rather, a lay witness may testify on the issue of damages, so long as the testimony is otherwise admissible.  Defendants, of course, retain the ability to make any appropriate objections concerning any such witness.

It is therefore

ORDERED that Defendants' Motion in Limine #1 to Exclude Certain Expert Testimony of Derk Rasmussen (Docket No. 796) is GRANTED IN PART AND DENIED IN PART. It is further

ORDERED that Defendants' Motion in Limine #2 to Exclude Opinions in, and any Reliance Upon, May 14, 2008 Report of Derk Rasmussen (Docket No. 797) is GRANTED IN PART AND DENIED IN PART. It is further

ORDERED that Defendants' Motion in Limine #5 to Preclude Discussion of Damages Not Addressed in a Timely Expert Report (Docket No. 814) is DENIED.

DATED   May 23, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge